**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 23, 2024**

# In the Court of Appeals of Georgia

A24A1028. REDFEARN v. MOORE et al.

BROWN, Judge.

In this interlocutory appeal, William Redfearn ("Defendant") appeals from the trial court's order denying his motion to enforce a settlement agreement in this action filed by Jaade Moore and Sierra Moore ("Plaintiffs"), seeking compensatory and punitive damages after Defendant allegedly struck and killed Plaintiffs' father as he waited with his disabled vehicle in a grassy area of the northbound emergency lane on Interstate 85. Defendant contends that the trial court erred in denying his motion because he unequivocally and without variance accepted all exclusive material terms enumerated by OCGA § 9-11-67.1 (a). For the reasons discussed below, we affirm.[1]

---

[1] We thank the Georgia Defense Lawyers Association for its amicus curiae brief.

In reviewing the trial court's order on a motion to enforce a settlement agreement, we apply a de novo standard of review and view the evidence in a light most favorable to the nonmoving party. *Torres v. Elkin*, 317 Ga. App. 135, 140 (2) (730 SE2d 518) (2012). The record reflects that on April 13, 2022, Plaintiffs' attorney made a pre-suit offer to Defendant's insurance carrier, State Farm Mutual Automobile Insurance Company ("State Farm").[2] The offer contained numerous specific terms and conditions, including that "State Farm is required to provide written acceptance of each term and condition of this Offer in its entirety in writing within 31 days from State Farm's receipt of this Offer" and that "[a]s an act required to accept this Offer, payment must be received 41 days after State Farm's receipt of this Offer." It also required that

> [a]s an act necessary to accept this Offer, State Farm must draft and
> deliver a limited release that complies with the requirements of this Offer

---

[2] The offer letter specifically provided: "As defined in OCGA § 9-11-67.1 (a) and OCGA § 9-11-1, no answer has been filed and no civil action has been commenced regarding this claim, and based on the provisions of OCGA § 9-11-67.1 (a) and OCGA § 9-11-1, this Offer is made pursuant to and governed by common law and provides an opportunity for contract formation as identified in OCGA § 9-11-67.1 (c)." OCGA § 9-11-67.1 (c) provides: "Nothing in this Code section is intended to prohibit parties from reaching a settlement agreement in a manner and under terms otherwise agreeable to both the offeror and recipient of the offer."

exactly as they are specified, required, and stated in this Offer, and any variance between the language of the limited release and the requirements of this Offer exactly as they are specified, required, and stated in this Offer, even if minor or accidental, will constitute a rejection of this Offer.

The offer further stated as follows: "It will be a rejection of this Offer if the settlement payment or any other document sent by State Farm includes any terms, conditions, descriptions, expirations, or restrictions that are not expressly permitted in this Offer." State Farm received the offer on April 18, 2022.

On April 26, 2022, eight days after receiving the offer, State Farm wrote a letter to Plaintiffs' counsel indicating that it was accepting Plaintiffs' demand and enclosing a proposed release and settlement check. In the letter, counsel for State Farm stated that "'State Farm agrees that any inconsistencies between [Plaintiffs'] Offer and OCGA § 9-11-67.1 do not invalidate [Plaintiffs'] Offer and the terms, conditions and acts required by [Plaintiffs'] Offer are controlled by [Plaintiffs'] Offer and not by OCGA § 9-11-67.1.'" Plaintiffs subsequently returned the settlement check, alleging that State Farm failed to accept the offer, and thereafter filed this action on January 18, 2023. Defendant answered and filed a motion to enforce settlement, alleging that Plaintiffs had entered into a binding settlement with State Farm. The trial court denied

the motion, finding that State Farm had rejected Plaintiffs' offer by (1) requiring the payment to be endorsed by all payees; (2) omitting commas in the payees' names on the payment; (3) including the claim number, named insured, and date of the loss on the payment; (4) sending payment eight days after the offer was received; and (5) failing to deliver a release identical in language to the offer. Defendant appeals this ruling.

1. Defendant contends that under the version of OCGA § 9-11-67.1 applicable at the time[3] — which was intended to address the unfair tactics advanced by plaintiffs in pre-suit offers — once he agreed to the five statutory material terms set forth in subsection (a), a binding settlement agreement was created irrespective of whether he agreed with the additional non-statutory terms. Defendant argues that if he is deemed to have accepted the additional non-statutory terms, but not to have complied with them, Plaintiffs' remedy is a claim for breach of contract.

OCGA § 9-11-67.1, which was amended in 2021 to require certain material terms, still allows parties to agree to other terms not outlined in subsection (a). See

---

[3] The statute was amended in 2024, effective April 22, 2024.

OCGA § 9-11-67.1 (b) (1),[4] (c). Thus, the 2021 amendment to OCGA § 9-11-67.1, which became effective July 1, 2021, does not change the general law regarding contract formation and settlement formation specifically. That general law provides that

> settlement agreements must meet the same requirements of formation and enforceability as other contracts. Importantly, there is no enforceable settlement between the parties absent mutual agreement between them. That existing law includes the fundamental principle of contract law that an offeror is the master of his or her offer, and free to set the terms thereof. And along those lines, an offeror may include terms of acceptance establishing a unilateral contract, whereby an offer calls for acceptance by an act rather than by communication. So, if an offer calls for an act, it can be accepted only by the doing of the act. And if the recipient of a pre-suit offer fails to perform the act required to accept the offer, then the parties do not have a meeting of the minds.

(Citations and punctuation omitted.) *Patrick v. Kingston*, 370 Ga. App. 570, 576-577 (1) (898 SE2d 560) (2024). See also *Pierce v. Banks*, 368 Ga. App. 496, 499 (2) (890 SE2d 402) (2023); *de Paz v. de Pineda*, 361 Ga. App. 293, 295 (2) (864 SE2d 134) (2021). In

---

[4] Subsection (b) (1) provides: "Unless otherwise agreed by both the offeror and the recipients in writing, the terms outlined in subsection (a) of this Code section shall be the only terms which can be included in an offer to settle made under this Code section."

*Pierce*, we reversed the trial court's grant of the defendants' motion to enforce settlement. 368 Ga. App. at 500 (2) (a). As in this case, the defendants in *Pierce* argued that a contract is created when parties agree on material terms and that they need not agree on non-material matters for a contract to form. Id. at 500 (2) (a). We rejected that argument, concluding that the contract at issue in that case was a unilateral one such that

> an offer calls for acceptance by an act rather than by communication. And if an offer calls for an act, it can be accepted only by the doing of the act. The acceptance by act must be 'identical' and 'without variance of any sort.' An offeree's failure to comply with the precise terms of an offer is generally fatal to the formation of a valid contract.

(Citations and punctuation omitted.) Id. See also *Atkinson v. Cook*, 271 Ga. 57, 58 (518 SE2d 413) (1999) ("an offeree's failure to comply with the precise terms of an offer generally is fatal to the formation of a valid contract"). For the same reason, we find no merit in Defendant's contention here.

2. Defendant contends that regardless of OCGA § 9-11-67.1, State Farm performed all acts necessary to perfect acceptance without variance. In this regard, Defendant argues, inter alia, that the endorsement language on the settlement check is not a "restriction" but a recital of Georgia law governing commercial paper, OCGA

§ 11-3-110 (d). The offer provided: "It will be a rejection of this Offer if the settlement payment or any other document sent by State Farm includes any terms, conditions, descriptions, expirations, or restrictions that are not expressly permitted in this Offer." The settlement check sent by State Farm was made payable to "Jaade Moore, Sierra Moore, the Estate of Theodore Moore Jr. and Gunn Law Group LLC" and included the following language on the back: **"MUST BE ENDORSED BY ALL PAYEES."**

Plaintiffs contend that their offer specifically prohibited such conditions and restrictions on payment because Plaintiffs live in Indiana and their attorney is located in Georgia; thus, Plaintiffs would be required to travel to Georgia to endorse the check, their attorney would be required to travel to Indiana, or the check would need "to leave the custody of the law firm so it could embark on a multi-state journey to each [Plaintiff] for signature and then (hopefully) be returned for deposit into the law firm's IOLTA for final distribution." Indeed, in order to avoid such a situation, Plaintiffs' retainer agreement with their attorney provided that the attorney may endorse any check received due to the case.

The Uniform Commercial Code ("UCC") provides that "[i]f an instrument is payable to two or more persons not alternatively, it is payable to all of them and may

7

be negotiated, discharged, or enforced only by all of them." OCGA § 11-3-110 (d). See also *Auto–Owners Ins. Co. v. Hale Haven Properties*, 346 Ga. App. 39, 55 (3) (b), n.12 (815 SE2d 574) (2018). As explained in the Official Comments to the UCC, "[u]nder Section 3-110 (d) the check can be negotiated or enforced only by both persons acting jointly. Thus, neither payee acting without the consent of the other, is a person entitled to enforce the instrument." OCGA § 11-3-420, Official Comment 1.[5] See also OCGA § 11–3–420 (a) ("[a]n instrument is . . . converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment"). Nonetheless, as Plaintiffs point out, under Georgia law, an agent or representative such as an attorney who has *expressly been given authority* may endorse a check on behalf of a payee without running afoul of OCGA §§ 11-3-110 and 11-3-420 (a). See *Tifton Bank & Trust Co. v. Knight's Furniture Co.*, 215 Ga. App. 471, 474 (1) (b) (452 SE2d 219) (1994). See also *Gerber & Gerber v. Regions Bank*, 266

---

[5] "In order to determine the meaning and purpose behind the enactment of a Georgia Commercial Code provision that is taken verbatim from the UCC, we turn to the UCC Official Comments for assistance." (Citation and punctuation omitted.) *Coleman v. DaimlerChrysler Svcs. of North America*, 276 Ga. App. 336, 339, n.3 (623 SE2d 189) (2005).

Ga. App. 8, 12 (2) (596 SE2d 174) (2004). Accordingly, Defendant's claim that the UCC requires the endorsement language at issue here is unpersuasive.

Regardless, as we have explained in other cases, under the 2013 version of subsection (f) of OCGA § 9-11-67.1, which is virtually identical to the 2021 amended version, defendants "could have chosen a number of other means to provide payment to [plaintiff], . . . yet they elected a payment method that, according to their argument on appeal, could not have satisfied the terms of the offer." *Pierce*, 368 Ga. App. at 502 (2) (c). See also *Patrick*, 370 Ga. App. at 576-578 (1) (reversing grant of motion to enforce settlement where "check indicating on its face that it was 'VOID IF NOT PRESENTED WITHIN 90 DAYS,' varied from the requirement in . . . offer that the settlement payment not 'include any terms, conditions, descriptions, or representations that are not permitted in the release'") (punctuation omitted). Likewise, in this case, State Farm, on behalf of Defendant, did not have to provide payment in the form of check; it could have chosen another form of payment as specified by subsection (f) in order to comply with subsection (a). See OCGA § 9-11-67.1 (f).[6]

---

[6] While Defendant takes issue with what he contends is the ubiquitous gamesmanship on the part of plaintiffs' attorneys who draft complex, convoluted

"When, like here, the recipient of a pre-suit offer fails to perform the act required to accept the offer, then the parties do not have a meeting of the minds." (Citations and punctuation omitted.) *Patrick*, 370 Ga. App. at 577 (1). Because the settlement check required an additional condition/restriction, the parties did not have a meeting of the minds. Accordingly, the trial court correctly ruled that there was no formation of a settlement agreement and we affirm its denial of the motion to enforce settlement.

3. Given our conclusion in Division 2, supra, we need not address the other alleged deficiencies with State Farm's acceptance of Plaintiffs' offer. See *Patrick*, 370 Ga. App. at 577 (1); *Pierce*, 368 Ga. App. at 503 (2) (c), n.9.

*Judgment affirmed. Dillard, P. J., and Padgett, J., concur.*

---

offers, "conditioned on a waiver of the protections guaranteed by [OCGA § 9-11-67.1]," as the concurrence intimates in *Pierce*, what may be perceived as a "trap for the unwary," may sometimes be "detail-oriented advocacy." 368 Ga. App. at 503 (Dillard, J., concurring). Much like the plaintiff in *Pierce*, Plaintiffs here thoroughly explain in their brief the hurdles required to obtain endorsements from all payees. This observation notwithstanding, nothing in our opinion should be construed as requiring a plaintiff to always assert a reason for why an offer required a specific act to be performed or prohibited a certain condition or restriction.